## MANWELL v. GRIMES *et al.*

No. 4078.    Opinion Filed June 8, 1915.

(149 Pac. 1182.)

1.  **GARNISHMENT—Exemption—States—United States.**   On the grounds of public policy, the government of the United States and officers and agents thereof, and the governments of the several states and their officers and agents, are exempt from the process of garnishment.

2.  **INDIAN AGENTS—Custodians of Funds—Bonds.**   Under Act Cong. July 1, 1898, c. 545, 30 Stat. 595 (U. S. Comp. St. 1913, section 4002)., "Indian agents are required to account for all funds coming into their hands as custodians, from any source whatever, and they are responsible therefor under their official bonds."

3.  **GARNISHMENT—Answer—Issues—Burden of Proof.**   In garnishment proceedings under the statutes of the state of Oklahoma, where the garnishee files the statutory answer setting up the fact that he is a United States government officer, and that fact is admitted, and the further fact that he holds the funds sought to be reached, as such officer, under a special order of the head of the department of which he is an officer or agent, and the plaintiff elects to take issue on said fact, the burden is on the party seeking to hold such funds to prove that said funds are not so held by such officer, and in case of failure of such proof, by a preponderance of the evidence, said funds will be discharged and the officer released from the garnishment process.

4.  **APPEAL AND ERROR—Findings of Fact—Funds Held by Garnishee.**   In such case the findings of fact by the trial court will not be disturbed by this. court, and the case will be affirmed unless it is shown that the lower court committed prejudicial error in the application of the law.

(Syllabus by Robberts, C.)

*Error from Superior Court, Pottawatomie County;*

*Geo. C. Abernathy, Judge.*

Action by West M. Manwell against L. C. Grimes and another, John A. Buntin, garnishee. From an order dis-charging an order of garnishment and releasing the gar-nishee, plaintiff brings error. Affirmed.

*Pitman & Goode*, for plaintiff in error.

*W. B. Herod* and *Isaac D. Taylor*, for defendant in error Buntin.

*W. N. Maben*, for defendant in error Grimes.

Opinion by ROBBERTS, C. This case comes from the superior court of Pottawatomie county on appeal from an order of that court discharging an order of garnish-ment, and releasing the garnishee. It appears from the record that a man by the name of Chapman obtained deeds to certain lands allotted to members of the Tribe of Kickapoo Indians. He deeded these lands to defendant L. C. Grimes, and L. C. Grimes and Martha A. Grimes deeded the same lands to plaintiff herein, West M. Man-well. All of said conveyances were made by statutory warranty deeds, while the title to the land was in the name of Grimes. He mortgaged part of it to different parties in divers amounts. An action was commenced in the United States Circuit Court of the Western District of this state by the United States government against the parties to cancel and set aside said deeds for the rea-son that the lands were within that class of lands known as Indian restricted lands. During the pendency of the suit to cancel the deeds a settlement was entered into between the government and said parties, in which it was agreed that the lands were to be, and they were, reconveyed to each of said Indians, or their heirs, in case of decease, the respective tracts which had been allotted to them, the grantors to warrant the title thereto against all

persons claiming by, through, or under them, and also agreeing to remove and settle all outstanding titles, incumbrances, and charges against any and all of said lands accruing by, through, or under said grantors or either of them. It was also agreed in said contract that an accounting should be taken between the parties, in which the Indians should account for the money received by them for the lands sold and all improvements placed thereon by the purchasers, and the grantors should pay all outstanding liens or claims against the land, and also account to the grantees for the rent and profits during the time they were in possession of said lands. By the terms of said contract all moneys coming to the Indians should be paid into the hands of Frank A. Thackery, Indian superintendent; and it was also provided in said contract that:

"Any money in the hands of said Thackery may be credited by him to the person entitled thereto, and retained by him [Thackery] for the benefit of other Indians to whom the same person is accountable hereunder."

The paragraphs or sections of the contract especially involved in this case, and which are sufficient to explain the questions to be determined herein, are as follows:

"Now, therefore, in order to effect a full and complete settlement of all of said litigation, the undersigned have executed and delivered herewith to Frank A. Thackery, special warranty deeds reconveying to each of said Indians or their heirs, in case of decease, the tracts so allotted to them, and warranting the titles thereto as against all persons claiming by, through, or under the undersigned, and the undersigned severally obligate themselves to remove and settle all outstanding titles, incumbrances, and charges against any and all of said allotments accruing by, through, or under them or either of them.

"The undersigned further acknowledge themselves accountable to said Indians in the various amounts specified in the said schedule as the rental value of said various

tracts during the various periods therein specified. It being understood, however, that the various amounts paid to various of said Indians, as well also the various amounts in value of improvements placed upon said allotments, as specified in said schedule, will be repaid by or for the Indians respectively who received said amounts and on whose allotments said improvements were placed; that the amounts so accountable to and from said Indians will be set off, and in case of a balance due from any Indian, as shown by said schedule, the same will be paid to the undersigned to whom the same is due from money of such Indian in the hands of Frank A. Thackery, Indian superintendent, as shown by said schedule, and in case of a balance due after such payment, an assignable lease of the allotments of such Indian will be made to the undersigned, as specified in said schedule, in settlement of such balance: Provided, however, that any moneys so payable to said Thackery may be credited by him to the person entitled thereto and retained by him for the benefit of other Indians to whom the same person is accountable hereunder: And, provided, further, that instead of giving a lease to settle any balance against an Indian, it shall be optional with the Department of the Interior to settle same with a promissory note of such Indian for such amount, bearing 6 per cent. interest from the date of approval of this proposition, and payable from the proceeds of a lease or sale of land of such Indian to be made under the regulations of the Interior Department.

"It is further understood that the undersigned Chapman and Brown are entitled to receive the moneys on deposit as aforesaid in the First National Bank of Eagle Pass, Tex., and also entitled to have conveyed to them an interest in the tracts of Mexican land purchased as aforesaid by Conine for various of said Indians, said interest being equivalent to the proportion that nine hundred ($900.00) dollars bears to eight thousand seven hundred ($8,700.00) dollars, the last-named amount being the purchase price of said Mexican land, nine hundred ($900.00) dollars of which belonged to said Chapman and Brown,

and seven thousand eight hundred ($7,800.00) dollars of which belonged to C. J. Benson, and that the proper officers and agents of the United States will diligently use every power and reasonable means to procure the payment of said moneys and the conveyance of said Mexican land, so far as said Indians are concerned.

"And it is further understood that this proposition shall become effective upon the acceptance and approval thereof by the Attorney General and the Secretary of the Interior of the United States, and thereupon the special warranty deeds delivered herewith shall be absolute and unconditional, and the amounts due hereunder from the undersigned to said Indians will then become payable, and, it appearing from said schedule that said Brown is accountable to the Indians, Pah-pe-ack, Pah-nah-ka-tho, and Pe-qua, in the sums of five hundred and fifty ($550.00) dollars, four hundred fifty-three ($453.00) dollars, and one hundred and twenty ($120.00) dollars, respectively, aggregating eleven hundred and twenty-three ($1,123.00) dollars, and that there is available in the hands of said Trackery seven hundred ($700.00) dollars herewith to discharge the seven hundred ($700.00) dollars due said Brown by Pah-pah-me-na-ko-tho, leaving a balance due from Brown to the three former Indians of four hundred and twenty-three ($423.00) dollars, there is deposited herewith by said Brown with said Thackery for said Indians the sum of four hundred and twenty-three ($423.00) dollars to be applied in payment thereof if this proposition is accepted and approved, otherwise to be returned to the said Brown.

"And it is further understood that upon acceptance and approval hereof final consent decrees will be entered by the Circuit Court of the United States for the Western District of Oklahoma in favor of the United States, in accordance with the decision heretofore rendered by said court and in each and all of the suits therein pending involving the validity of the deeds to said allotments."

It must be borne in mind that the only object sought to be obtained in making this statement, and reproducing a part of the contract, is to show the class and kind of funds involved, from whence they came, and the manner and means by which they are being held by the garnishee, John A. Buntin, United States superintendent of the Shawnee Indian School and *ex officio* successor to Frank A. Thackery, as Indian superintendent of the Kickapoo Indian Tribe. After the settlement above referred to had been completed, and at least part of the funds, as proceeds of said settlement, had gotten into the hands of John A. Buntin, United States superintendent of Shawnee Indian Schools and *ex officio* Indian superintendent, the plaintiff herein, West M. Manwell, commenced an action against defendants, L. C. Grimes and Martha A. Grimes, for breach of warranty, and obtained judgment for $3,160.88, and at the same time, for the purpose of getting hold of the funds in the hands of John A. Buntin held by virtue of said contract of settlement, plaintiff caused a writ of garnishment to be issued and served upon him. To this proceeding in garnishment Buntin filed the statutory answer in due time setting up in substance:·

(1) "The settlement contract hereinabove referred to, and claiming that he held said funds as an officer and agent of the United States government, in trust for the several respective Indians, as wards of the government, and that by reason thereof·he was not subject to garnishment proceedings in said cause, and that the funds so held by him were not liable nor subject to said proceedings in garnishment."

(2) "Denying that he held any property or assets subject to seizure. or. sale by judgment, attachment, or execution that belonged to said judgment debtor."

(3) "That he held certain funds that might become the property or funds of defendant Grimes upon the hap-

pening of certain contingencies that had not as yet happened."

Within the time required by law the plaintiff filed notice of his exceptions to the answer of the garnishee. As stated before, final judgment was rendered in favor of the plaintiff which has become final. Trial was had upon the issues joined in the garnishment proceedings, and judgment of the court rendered against the contentions of plaintiff, discharging the writ of garnishment and releasing the garnishee. Said judgment is as follows:

"That, the money, notes, checks, and other evidence of indebtedness in the hands of the garnishee and belonging to the defendants, L. C. Grimes and Martha A. Grimes, are the proceeds, fruits, and results of trust funds now in the custody and control of the garnishee as an officer of the United States government, as shown by the garnishee's answer, and made so by virtue of a contract made by and between Frank A. Thackery, an officer of the United States government, and of whom the garnishee is the successor, and the defendant L. C. Grimes, and is therefore not subject to garnishment."

This brings us to the question remaining in this case, viz.: Did the court err in holding that the funds in the hands of Buntin were not subject to garnishment? It is hardly necessary to say that, if these funds are held by the garnishee in his official capacity, or as trust funds, they are not subject to garnishment, nor the garnishee subject to garnishment process. It is admitted that Buntin is the United States superintendent of the Shawnee Indian Schools. It is proven by all the facts and circumstances in the case that these funds came into his hands by virtue of his office. There is no evidence even tending to show that John A. Buntin was or would have been selected or agreed upon as trustee for said funds in his

individual capacity. There is no evidence that he was even personally known to any of the parties. The same facts apply equally to Frank A. Thackery. The original contract provided that the funds derived from the settlement of the void Indian land sales should be paid into the hands of Frank A. Thackery, who was at the time superintendent of the Kickapoo Indian agency, and special disbursing agent. The garnishee, Buntin, became his successor by virtue of being the superintendent of the Shawnee Indian School, presumably, under departmental order of the Honorable Commissioner of Indian Affairs, as provided in Act Cong. May 27, 1902, c. 888, U. S. Stat. at Large, vol. 32, p. 247, and U. S. R. S., sec. 2053, volume 3, Fed. Stat. Ann. p. 348 (U. S. Comp. St. 1913, sec. 3992). He became *ex officio*, and was acting as the Indian agent. Act May 27, 1902, c. 888, provides that:

"Superintendents of schools acting as Indian agents shall give bond as other Indian agents."

Section 2058, R. S., volume 3 Fed. Stat. Ann. at page 349 (U. S. Comp. St. 1913, sec. 4000) provides:

"Each Indian agent shall, within his agency, * * * execute and perform such regulations and duties, not inconsistent with law, as may be prescribed by the President, the Secretary of the Interior, the Commissioner of Indian Affairs, or Superintendent of Indian Affairs."

There can be no question but the garnishee was acting in the capacity of and as the superintendent of the Indian agency, and there can be no question but that he received and held these particular funds, all of them, as superintendent of the Shawnee School and *ex officio* superintendent of the agency. Act July 1, 1898, c. 545, 30 U. S. S. at Large, 595, provides:

"Hereafter Indian agents shall account for all funds coming into their hands as custodians from any source whatever, and be responsible therefor under their official bonds."

Evidently this act of Congress was passed for the direct purpose of covering and including just such cases as this, to prohibit agents and officers of the government from receiving money as trustees, and afterwards claiming that they received it in a personal or individual capacity, and not as an officer or agent of the government, thereby raising the question as to whether the funds were held in an official or personal capacity. No doubt, before that act was passed it was often a close, and many times a troublesome, question to determine as to just how and in what capacity funds in the hands of a public officer or agent were being held, and the department was put to much trouble and expense, as in this case, in settling the question. To avoid all such troubles, Congress enacted that:

"Hereafter Indian agents shall account to the government for all funds coming into their hands from any source whatever."

This language is broad—certainly broad enough to cover this case.

As said by Justice Harlan in *United States v. Rickert*, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532:

"These Indians are yet wards of the nation, in a condition of pupilage or dependency, and have not been discharged from that condition. * * * From their very weakness and helplessness * * * there arises the duty of protection. * * * This has always been recognized by the executive and by Congress, and by this court, whenever the question has arisen."

This was undoubtedly the idea and moving spirit of the parties to the contract at the time of the settlement of the affairs between the government and the wrongful title holders of the restricted Indian allotments involved herein, and that is the reason, based upon the absolute requirements of the law, why these funds were to be "paid into the hands of the Indian agent" to be held by him as such government officer in trust for its wards, and to be distributed under and by the special supervision of the government.

Counsel for plaintiff attempt to make a specialty of two or three particular payments, or classes of funds in the hands of the officer, but, without any special or particular attention to these items, we here lay down the general rule applicable to all the funds, of any kind and nature, in the hands of the garnishee, that they are not subject to garnishment, and that the garnishee, Buntin, being a government officer, and holding said funds as such, is not subject to the process of garnishment. We do not pretend to have related the exact facts in every particular in this case, but have given the substance, with a view only of showing the circumstances and general conditions under which the funds involved are being held.

The judgment of the lower court was in full accord with the facts and the law in the case, and should be affirmed.

By the Court: It is so ordered.