LUHRING, J.
The plaintiff in this cause, Frank L. Warren, petitions this court to issue a writ of mandamus commanding the defendants, Harold L. Ickes, Secretary of the Interior, and John Collier, Commissioner of Indian Affairs, to pay and turn over to the plaintiff the sum of 18,586.72, with interest, from the funds *2 inherited from the estate of Joseph Harjo by Betsy Harjo and now held by or under the custody and control of the defendants.
The pertinent facts of this case are as follows:
Tersey Baker, a full-blood Creek Indian, was allotted a homestead in Hughes County, Oklahoma. He died March 15th, 1911, and this homestead allotment was inherited by Betsy Harjo, his widow, and Joseph Harjo, his son. Under section 9 of the Act of 1908 (35 Stat. 312), the homestead inherited by Betsy Harjo and Joseph Harjo was subject to a special estate in favor of Joseph Harjo, issue of the allottee, who was born after March 4th, 1906. By reason of this special estate the homestead was inalienable during Joseph Harjo’s life, until April 26th, 1931. On October 28th, 1915, Betsy Harjo, acting for herself and in behalf of Joseph Harjo, executed an oil and gas lease of the restricted homestead, with the approval of the Secretary of the Interior. This lease was subject to the rules and regulations of the Secretary of the Interior governing oil and gas leases made on restricted Indian lands, the provisions of which, in so far as applicable here, are in part as follows:
“Provided, however, that the said superintendent . . . for the Five Civilized Tribes is authorized, in his discretion, where considered for the best interest of any adult, minor, or incompetent lessor, or his or her heirs, for whose account royalties . . . accruing under any lease have been paid to said superintendent, to withhold the disbursement of such royalties, . . . wholly or in part, from any such adult or guardian or curator of any such minor or incompetent, or his or her heirs, until such time or times as the payment thereof is considered best for the benefit of said lessor or his or her heirs.
* * * -X- *
“And provided also, that from the individual Indian restricted funds derived as royalties or otherwise no disbursements in settlement of litigation or in payment of attorney’s fees . . . shall be made except with the approval of the Secretary of the Interior thereto. . . .”
*3 Joseph Harjo died October 15th, 1930, and left as his sole heir, his mother, Betsy Harjo. The accumulated royalties from the oil lease at the time of Joseph Harjo’s death amounted to approximately $50,000, and were, and now are, in the possession and control of the Secretary of the Interior. Probate proceedings under the Oklahoma law were instituted in the County Court of Hughes County, Oklahoma, and Betsy Harjo, through her attorneys, petitioned the Probate Court to determine Betsy Harjo as the sole heir to Joseph Harjo’s estate. Subsequently Addie Mingo and her child, Mary Ellen Mingo, answered Betsy Harjo’s petition and filed a cross-petition, petitioning the court to determine them, Addie and Mary Ellen Mingo, as the widow and child of Joseph Harjo to be his sole surviving heirs. Thereupon Betsy Harjo employed the petitioner, Frank L. Warren, as her attorney, to defend against the claim advanced by Addie Mingo and her child, and also to defend a damage suit impending against the Joseph Harjo estate. Betsy Harjo contracted in writing to pay Frank L. Warren for such services one-third the amount of land and funds involved in the claim of Addie Mingo and saved to Betsy Harjo, and one-third the amount involved in the damage suit. This contract was approved by the County Judge.
Frank L. Warren successfully defended against the claim of Addie Mingo and, on the 27th day of September, 1932, the Probate Court decreed that Addie Mingo and Mary Ellen took nothing by their answer and cross-petition and that they had no right, title or interest in the Joseph Harjo estate. Pursuant to the contract of employment, Betsy Harjo deeded to Frank L. Warren on October 26th, 1932, a one-sixth interest in the old Tersey Baker homestead, this being one-third of Joseph Harjo’s one-half which was involved in the claim made by Addie Mingo. Betsy Harjo, also, on the same date, gave to Frank L. Warren a mortgage on the remaining five-sixths of the Tersey Baker homestead to secure the payment of a promissory note, executed by her, in the sum of $8,586.72, payable to Warren, *4 dated October 15th, 1932, and due April 25th, 1933, with interest at the rate of 10 per cent from date. This note represented one-third of the amount of Joseph’s share of the funds, amounting to $25,760.12, derived from the oil royalties, which were involved in the Addie Mingo claim and which were under the control of the Secretary of the Interior. Both the deed and the mortgage were approved by the Oklahoma County Court, as required by the Act of Congress.
On October 7th, 1932, Frank L. Warren demanded of the defendants in this cause payment of his claim against Betsy Harjo for $8,586.72; and on August 23rd, 1933, Betsy Harjo requested the defendants to pay this claim. The defendants refused to pay Mr. Warren’s claim on the ground that the funds from which payment was sought were restricted, and that, therefore, they were to be withheld and/or disbursed for the Indian owner as the Secretary in his discretion might determine. Subsequently, and on the 20th day of November, 1933, Mr. Warren filed his petition for mandamus in this cause.
The petitioner asserts a vested right to a one-third interest in the fund belonging to the estate of Joseph Harjo, deceased, and which is in the hands and under the control of the Secretary of the Interior, and this right he bases on three grounds. First, he claims that by virtue of his contract of employment as the attorney for Betsy Harjo, he acquired a lien on such funds, under Sections 4204 and 4205 of the laws of the State of Oklahoma (1931); second, that such contract and agreement constituted an equitable assignment to him, as the attorney for Betsy Harjo, of a one-third interest in the subject matter of the litigation, that is, a one-third interest in the fund held by the Secretary of the Interior belonging to the estate of Joseph Harjo, deceased; and third, that the letter of August 23rd, 1933, written by Betsy Harjo to the Commissioner of Indian Affairs, wherein she requested the payment to the petitioner of the amount due the petitioner under his con *5 tract of employment, was an assignment to the petitioner of a one-third interest in such fund.
The petitioner insists that upon the death of Joseph Harjo, October 16th, 1930, the lands and the funds in the possession and control of the Secretary passed to Betsy Harjo, freed of all restrictions, except that a conveyance of the homestead required the approval of the County Court in Oklahoma, and that Betsy Harjo was free to enter upon the contract of employment. It is contended by the petitioner that no lawful rule or regulation expressly made part of the oil lease can operate to restrict or otherwise control the disposition of the funds derived from such lease, when the restrictions have been removed from the land.
It is quite obvious that the petitioner is entitled to the relief he seeks only if several doubtful questions are resolved in his favor. They are (1) whether a mandatory duty is imposed upon the Secretary to make this payment, even though the fund is not restricted, when the regulation, made a part of the oil lease, required that any disbursement from such fund in payment of attorney’s fees must be made with his approval; (2) whether in fact the petitioner acquired a statutory lien under the laws of Oklahoma upon such fund; (3) whether the agreement between the petitioner and Betsy Harjo, whereby she agreed that the petitioner should have a one-third interest in such fund for his services, constituted an equitable assignment of that part of the fund; (4) whether the letter written by Betsy Harjo to the Commissioner of Indian Affairs on the 23rd day of August, 1933, operates as a valid assignment of the fund in view of the provisions of the Act of January 27th, 1933; (5) whether or not the acceptance by the petitioner of the note and mortgage, executed by Betsy Harjo on the 15th day of October, 1932, for the amount here involved, was a waiver of the lien, if any, on the funds theretofore acquired by the petitioner by reason of the services rendered, and (6) whether or not any right acquired by the petitioner is not sub *6 ordinate to the power of the Congress to further restrict such funds in the hands of the Secretary of the Interior.
The pertinent provisions of Section 4204 of the Laws of the State of Oklahoma are as follows:
“From the commencement of an action, or from the filing of an answer containing a counterclaim the attorney who represents the party in whose behalf such pleading is filed shall . . . have a lien upon his client’s cause of action or counterclaim, and same shall attach to any verdict, report, decision, finding or judgment in his client’s favor, and the proceeds thereof, wherever found, shall be subject to such lien, . . .”
Section 4205 authorizes contingent fee contracts not exceeding 50 per cent.
It is by virtue of the provisions of these sections that the petitioner in his application asserts a lien upon the funds in the custody and control of the Secretary.
This statutory lien law has been under consideration by the Supreme Court of the State of Oklahoma, and it is held that an attorney has a lien, by virtue of the sections quoted, upon his client’s affirmative cause of action only, and this statutory lien cannot be extended to services which merely protect an existing right or title of his client’s property. He cannot impress such property with such statutory lien. Elliott v. Orton, (Okla.) 171 Pac. 1110; Holloway v. Wright, (Okla.) 215 Pac. 937.
Betsy Harjo was the sole and only heir at law of Joseph Harjo, deceased, and the services rendered by the petitioner as an attorney consisted merely in protecting her existing right and title to property, real and personal, which she inherited from her son.
However, the petitioner further insists that, even though he did not acquire a statutory lien, his agreement of employment with Betsy Harjo constituted an equitable assignment to him of an interest in the subject of the litigation. In Lashley v. Moore, 240 Pac. 704, the Supreme Court of Oklahoma held that the sections above referred to are cumulative and did *7 not abrogate or limit the rights of attorney and client to make contracts between themselves, and that by reason of the contract of employment the attorney in that case acquired an equitable lien. In this case Lashley was employed by written contract as an attorney to bring an action to quiet title to certain real estate owned by the defendent. But see Manwell v. Grimes, (Okla.) 149 Pac. 1182; White v. Wright, (Okla.) 1 Pac. (2) 668.
Assuming that the petitioner did acquire an equitable lien on the funds of Betsy Harjo under the control of the Secretary, what effect, if any, did the acceptance of the note and mortgage have upon such lien? The petitioner still holds such note and mortgage, and the mortgage is of record. He does not offer to surrender the note and cancel the mortgage. At the time the note and mortgage were delivered to the petitioner he had his election either to accept them or stand upon his equitable lien. He chose the former course, and thereby elected to stand by the mortgage. His position here is that if the equitable lien for any reason cannot be sustained he will have recourse to the mortgage. The allowance of the remedy by mandamus is controlled by equitable principles. U. S. v. Dern, 289 U. S. 352, 359.
What has been said clearly indicates the doubtful right and title claimed and asserted by the petitioner; Courts uniformly refuse this extraordinary writ unless it affirmatively appears that the plaintiff has a clear and complete right to the performance of the act which he seeks to compel the defendant to perform. As Mr. Chief Justice Martin so well stated in the case of U. S. v. Deming, 51 App. D. C. 223, 224:
“The purpose of mandamus is not to establish a legal right but to enforce one already established; hence the legal right of relator to the performance of the particular act of which performance is sought must be clear and complete. It has been said with good reason that the right to its performance must be so clear as not to admit of reasonable doubt or controversy. The right involved must also be substantial, and *8 not a mere abstract right. When brought against public officers in a case like this, the duty sought to be enforced must be ministerial only, and not within defendants’ discretion.”
(Appeal noted May 7, 1934. Ed.)
The remedy by mandamus may be refused for reasons comparable to those which would lead a court of equity, in the exercise of a sound discretion, to withhold its protection of an undoubted legal right. U. S. v. Dern, supra. Prior to the filing of the petition herein Congress declared it to be the policy of the Government to restrict the funds and securities belonging to Indians of the Five Civilized Tribes in Oklahoma of one-half or more of Indian blood and subject such funds and securities to the jurisdiction and control of the Secretary of the Interior until April 26, 1956.
The Indians are wards of the nation. Congress has plenary power to exercise its guardianship over them, and it was in the exercise of that power that the Act of January 27, 1933, was enacted. This Act provided in part as follows:
“That all funds and other securities now held by or which may hereafter come under the supervision of the Secretary of the Interior, belonging to and only so long as belonging to Indians of the Five Civilized Tribes in Oklahoma of one-half or more Indian blood, enrolled or unenrolled, are hereby declared to be restricted and shall remain subject to the jurisdiction of said Secretary until April 26, 1956, subject to expenditure in the meantime for the use and benefit of the individual Indians to whom such funds and securities belong, under such rules and regulations as said Secretary may prescribe.”
The Court of Appeals has had occasion to consider this Act, and its decisions, recognizing the power of Congress to deal with Indians, are binding upon this court and control here. Darks v. Ickes, App. D. C., decided February 5, 1934; Ickes v. Perry, App. D. C., decided April 3, 1933; King v. Ickes, App. D. C., decided April 3, 1933.
The rule is discharged and the petition for writ of mandamus dismissed.