## CARL MERVELDT & SON v. BIGGS et al. (CARTER, Garnishee).

No. 31278. March 7, 1944.

Rehearing Denied April 4, 1944.

*147 P. 2d 146.*

Meacham, Meacham, Meacham & Meacham, of Clinton, and J. A. Rinehart, of El Reno, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Houston W. Reeves, Asst. Atty. Gen., and Rex H. Holden, of Oklahoma City, for defendant in error Frank C. Carter, State Auditor.

DAVISON, J. This appeal involves a controversy between Carl Merveldt & Son, a copartnership, as judgment creditor, and Frank Carter, who, as State Auditor, was served with a garnishment summons and, after the service thereof, paid out to another funds of the state which the judgment creditor asserts he should have held and paid to it.

This is a second appeal to this court in connection with the same dispute. Our former decision, styled Carter v. Carl Merveldt & Son, is reported in 183 Okla. 152, 80 P. 2d 254. We therein reversed a judgment of the district court of Custer county holding Carter liable to the judgment creditor. Our decision was based upon the improper exclusion of evidence.

On retrial of the case a jury was impaneled to determine the issues of fact. However, at the conclusion of the evidence, the trial court decided that no controlling issue of fact was involved. The jury was therefore discharged and judgment was entered in favor of Mr. Carter. The plaintiff presents the cause on appeal, appearing herein as plaintiff in error.

In this opinion the parties will be referred to as appellant and appellee, respectively, when not otherwise specifically described.

The facts, so far as essential to the disposition of this appeal, are as follows:

Frank Carter, as State Auditor, was served with garnishment summons on October 5, 1932. The garnishment proceedings were ancillary to an action then pending in the district court of Custer county in which the appellant herein was plaintiff and Joe Biggs and others were defendants. The garnishment summons required the State Auditor to answer and disclose any indebtedness due and owing Joe Biggs. On October 29, 1932, the appellee answered stating that: (1) the State of Oklahoma was not indebted; (2) that he would "hold the warrant drawn in payment of the claim."

The two portions of the answer are inferentially inconsistent. Apparently the last was due to the use of an inappropriate form, for the answer was thereafter treated by the parties as one denying the existence of indebtedness. Issue was taken with the answer of the auditor on that theory.

From the proof it appears that the state, through the Highway Department, was at one time indebted to Joe Biggs, but it is doubtful if there was any record of such indebtedness available in the office of the State Auditor at the time the garnishment summons was served.

Prior to the service of the garnishment summons, Joe Biggs assigned (although the effectiveness of the assignment as to appellant is debatable) his claim against the state to the Union Indemnity Company.

On November 22nd the assigned claim was filed with the State Auditor, and thereafter warrant in payment thereof was issued and delivered to the assignee.

Apparently through oversight on the part of some assistant or employee of the State Auditor, the existence of the pending ancillary proceeding in garnishment and its connection with the assigned claim was overlooked when the warrant was delivered to the assignee of the claim. The reasonable inference from the record is that appellee as State Auditor would not have assumed to decide who was entitled to the funds involved had the existence of the dispute been noted at the proper time. On the contrary, he would probably have regarded the state's position as that of a stakeholder. However, having through an assistant or employee of his office overlooked the pending dispute in garnishment, he now asserts the effectiveness of the prior assignment in justification of the disbursement and in support of the accuracy of his answer in garnishment. The appellant herein denies that the assignment was effective as to it by reason of the character of the indebtedness due it and upon other considerations not herein necessary to discuss.

The dispute between the parties to this appeal on this phase of the case is carefully briefed and involves the consideration of intricate legal theories which it would be improper for us to discuss and dispose of in this opinion, because the law would not permit a personal recovery against the officer if it should be determined that the disbursement of funds herein involved was ill-advised and erroneous. It should be noted that appellant's claim to the fund disbursed rests entirely upon the garnishment proceeding, and that the assignee of the claim was the proper recipient in the absence of such proceeding.

The appellee contended in the trial court and asserts in this court that under the law of this state he cannot be held personally liable in the garnishment proceeding unless he failed, refused, or neglected to answer. This position is basically sound and rests upon the fundamentals which control the law of garnishment in its application to state, municipality, and public officers.

12 O. S. 1941 § 1186, which has been a part of the statutory law in this jurisdiction for more than 50 years (R. L. 1910 § 4836; Statutes 1893 § 4092), provides in part as follows:

"No judgment shall be rendered upon a liability of the garnishee arising—

"Third. By reason of any money in his hands as a public officer, and for which he is accountable to the defendant merely as such officer."

This statute is a declaration of the general or common law as it exists in the absence of specific statutory provision. This court and the courts of our sister states have held with practical unanimity that, in the absence of specific statutory provision to the contrary, states, their political subdivisions, and the officers and agents thereof are immune from garnishment process and liabilities incident thereto. Generally, this doctrine is said to rest upon public pol-

icy. It is often referred to as an incident to governmental immunity to civil liability. Its tendency and purpose is to prevent undue interference with the normal functions of government. 4 Am. Jur. 640, para. 141; Nacy, State Treas., v. Pros Le Page, 341 Mo. 1039, 111 S. W. 2d 25, 114 A. L. R. 259; annotation 114 A. L. R. 261, and previous annotations in the selected case series as therein noted; Clark et al. v. Board of Commissioners of Osage County, 62 Okla. 7, 161 P. 791; Manwell v. Grimes, 48 Okla. 72, 149 P. 1182; White v. Wright, 151 Okla. 93, 1 P. 2d 668.

Frank Carter, appellee herein, is entitled to invoke the immunity provided by section 1186, supra, and the general law relating to immunity from garnishment process unless, in the case at bar, he is liable under some specific provision of our statutes which operates to create an exception to the general rule.

The immunity from garnishment process and liability incidental thereto is one which may be waived by the state through appropriate action of the Legislature. Our Legislature has seen fit to partially waive the immunity. It enacted chapter 33, S. L. 1925 (now 12 O. S. 1941 §§ 1192, 1193, 1194). The act was described in its title as one designed to provide for "garnishment in the courts of this state of money due from the state and municipal corporations in this state to persons," etc.

The act is by the provisions of the body of the act, as forecast by the title, designed to provide a means of garnisheeing funds in the hands of the garnishee and due and owing to persons, corporations, etc. Primarily, it constitutes a partial waiver of governmental immunity from garnishment process and liability incident thereto. We use the term partial waiver advisedly and upon consideration of the provisions of the body of the act because the Legislature was careful to provide that in no event should a personal liability be created against the state or its political subdivisions. It waived the governmental immunity from the service of gar-

nishment process by section 2 of the act (sec. 1193, supra, as amended S. L. 1939, pg. 1) but preserved the immunity of the state and its subdivisions from the imposition of pecuniary liability by section 3 of the act (sec. 1194, supra). However, for the obvious purpose of insuring that an answer in garnishment be filed by the officer upon whom garnishment process should be properly served, it adopted one single provision recognizing one contingency upon which liability could be created against an officer upon whom service of garnishment summons could be made under the act. The contingency was expressed in the concluding clause of section 3 of the act (section 1194, supra), which provided:

"All garnishees shall answer in writing within ten days from date of service, which answer shall be verified by affidavit of the officer making such answer; provided, no judgment shall be rendered against the state, or any county, city, town, board of education, school board or any municipal subdivision of the state under the provisions of this act, *but judgment may be rendered against any person served as herein provided who shall fail, neglect or refuse to answer the garnishment summons as provided herein.*" (Emphasis ours.)

Section 4 of the act (ch. 33, S. L. 1925), which was not carried forward into O. S. 1941, provided generally for the repeal of prior inconsistent acts. The effect of that section was to abrogate and render ineffective the immunity of the pre-existing general statute specifying immunity of officers from liability in garnishment (sec. 1186, supra), insofar only as the general statute conflicted with the provisions of the act in which the repealing clause was contained. Nettles v. Carson, 77 Okla. 219, 187 P. 799; Greer v. Bird, 93 Okla. 246, 220 P. 579. Thus the later and narrower act only operates to carve from the operation of the former general statute situations which fall peculiarly within the provisions of the last and limited legislative pronouncement. Norton Johnson Buick Co. v. Lindley, 173 Okla. 93, 46 P. 2d 525.

58

.Thus, under our law as it now exists, a public officer upon whom service of garnishment summons may be made under section 1193, supra, can be held personally liable under section 1194, supra, if he does not answer, but if he answers he is immune from personal liability in garnishment with respect to funds in his hands as a public officer by virtue of section 1186, supra. Such immunity would also exist under the general law independent of statutory enactment.

The policy which governed the Legislature in enacting chapter 33, S. L. 1925, supra, is readily apparent. It was intended to preserve in a large measure the immunity from personal liability provided by section 1186, supra. This immunity affords protection for mistakes inadvertently made in disbursements of funds. It was not contemplated that public officers would deliberately or intentionally answer in garnishment incorrectly or disburse funds to one of two or more adverse claimants without appropriate order from the court having control of the garnishment proceeding. Thus the imposition of liability on those contingencies was not thought necessary. The omission was inferentially an expression of legislative confidence in the disposition of public officers to act fairly in matters connected with their offices.

But the Legislature anticipated the possibility that some officers might feel disposed not to act at all, that is, not to answer. In order to insure litigants that garnishment summons would not be ignored by public officers, liability was imposed for failure to answer, but not otherwise.

In this case the appellee, Carter, did answer. It follows that he is not liable.

The judgment of the trial court is affirmed.

CORN, C.J., and OSBORN, HURST, and ARNOLD, JJ., concur. GIBSON, V.C.J., and RILEY, BAYLESS, and WELCH, JJ., dissent.